## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OUR BODY ELECTRIC, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> NOOM, INC., <br><br> *Defendant*. | Civil Action No.:   1:24-cv-00678-JGK <br><br> **Jury Trial Demanded** |

## COMPLAINT

Plaintiff Our Body Electric, Inc. ("obé"), for its Complaint against defendant Noom, Inc. ("Noom") for [REDACTED], unfair competition under the Lanham Act and New York common law, and false advertising under the Lanham Act, alleges as follows:

### I.    PARTIES

1.    Plaintiff obé is a Delaware corporation with its principal place of business at 45 Main Street, Suite 234, Brooklyn, New York 11201.

2.    Upon information and belief, Defendant Noom is a Delaware corporation, with its principal place of business at 450 West 33rd Street, 11th Floor, New York, New York 10001.

### II.    JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction under 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331, 1332(a), 1338(a) & (b), [REDACTED], and 28 U.S.C. § 1367(a).

4.    This Court has jurisdiction over the federal unfair competition and false advertising claims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a).

5.    [REDACTED]

- 1 -

6.      Therefore, this Court has subject matter and original jurisdiction over these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), respectively.

7.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) as all claims herein form part of the same case or controversy.

8.      This Court has personal jurisdiction over the Noom because it has a principal place of business in New York.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1).

III.    **FACTUAL ALLEGATIONS**

    A.    **Plaintiff Our Body Electric, Inc.**

10.     Based in New York, and founded in 2018, Our Body Electric, Inc., also known as obé Fitness is a subscription-based online streaming workout platform that offers live-streamed and recorded workout sessions.

11.     The company was co-founded by Ashley Mills and Mark Mullett.

12.     obé offers personalized fitness plans, programs, and workouts for all fitness levels with a wide variety of options, including barre, strength, cardio, Pilates, yoga, HIIT (high-intensity interval training), and sculpting, among others.

13.     Users of obé's products can select their schedule and their preferred instructors and can access workouts live or on-demand at their convenience at home, at the gym or while traveling. Sessions can be viewed on a mobile device or website. obé also has an online shop that offers fitness equipment, accessories, and apparel.

    B.    **MUSCLEGUARD Trademark**

14.     obé is the owner of valid and subsisting trademark for the mark MUSCLEGUARD (hereinafter "MUSCLEGUARD Mark") for a fitness program and coaching.

15.    obé has used the MUSCLEGUARD Mark in commerce throughout the United States continuously since at least the beginning of January of 2024 or earlier in connection with the provision, offering for sale, sale, marketing, advertising, and promotion of, among others, a fitness program.

16.    Below is a representative example of use of the MUSCLEGUARD Mark in connection with fitness programs and coaching:





17.    As a result of its widespread, continuous, and exclusive use of the MUSCLEGUARD Mark to identify its fitness programs and obé as their source, obé owns valid and subsisting common law rights to the MUSCLEGUARD Mark.

18.    obé's MUSCLEGUARD Mark is distinctive to both the consuming public, and obé's trade including the healthcare industry.

19.    obé has expended substantial time, money, and resources researching, developing, and creating content for the MUSCLEGUARD program. obé has also made significant investment on marketing, advertising, and promoting the fitness programs sold under the MUSCLEGUARD Mark including through engineering and product efforts, content creation, influencer marketing, affiliate marketing, brand partnership efforts, and paid marketing.

20.    obé offers and sells its fitness programs and coaching under its MUSCLEGUARD Mark to the general public.

21.     The programs obé offers under the MUSCLEGUARD Mark are of high quality, exceeding the most rigorous industry standards.

22.     As a result of obé's expenditures and efforts, the MUSCLEGUARD Mark has come to signify the high quality of the fitness programs designated by the MUSCLEGUARD Mark, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to obé.

**C.      [REDACTED]**

23.     [REDACTED]

24.     [REDACTED]

25.     [REDACTED]

26.     [REDACTED]

27.     [REDACTED]

28.     [REDACTED]

29.     [REDACTED]

30.     [REDACTED]

31.     [REDACTED]

32.     [REDACTED]

**D.      [REDACTED]**

33.     [REDACTED]

34.     [REDACTED]

35.     [REDACTED]

36.     [REDACTED]

37.     [REDACTED]

38.     [REDACTED]

39.     [REDACTED]

40.     [REDACTED]

41.     [REDACTED]

42.     [REDACTED]

43.     [REDACTED]

44.     [REDACTED]

45.     [REDACTED]

46.     [REDACTED]

47.     [REDACTED]

48.     [REDACTED]

49.     [REDACTED]

50.     [REDACTED]

51.     [REDACTED]

**E.**     **[REDACTED]**

52.     [REDACTED]

53.     [REDACTED]

54.     [REDACTED]

55.     [REDACTED]

56.     [REDACTED]

**F.**     **[REDACTED]**

57.     [REDACTED]

58.     The press release announced a "groundbreaking partnership through its commercial business, Noom for Work, with Liviniti to offer a comprehensive metabolic offering for plan sponsors and their employees consisting of Noom Weight, Noom Diabetes Prevention Program, and Noom's newest offering: Noom GLP-1 Companion."

59.     Strangely, the press release included images that showed a fitness offering under the "Muscle Guard" name—a name that was first used and created by obé.



60.     [REDACTED]

61.     [REDACTED] Noom changed the name to "Muscle Defense," which is still confusingly similar to MUSCLEGUARD.

62.     [REDACTED]

63.     The press release announcing the Noom and FitOn partnership came out only a week after obé sent the cease and desist letter.

64.     On January 19, 2024, Noom and FitOn also issued a press release, entitled "Noom GLP-1 Companion to Add 'Muscle Defense' to Promote Safer GLP-1 Use: Noom's Partnership with FitOn Addresses Negative GLP-1 Side Effects Head On."

65. Despite the cease and desist letter of January 12, 2024, the press release Noom stated that it is "proud to announce a partnership with FitOn to add a 'Muscle Defense' enhancement to its newly launched Noom GLP-1 Companion."

66. A true and correct copy of the press release for this partnership is attached hereto as **Exhibit 3** and incorporated herein by reference.

67. The press release provides the following information:

a. The Muscle Defense program includes a series of FitOn resistance training exercises curated by Noom's Chief of Medicine Linda Anegawa, MD, FACP, Dipl. ABOM, to combat sarcopenic obesity and the reduction of lean muscle mass. Key features of Noom GLP-1 Companion with Muscle Defense include:

b. A Program Designed by Noom's Chief of Medicine & Fitness Leader FitOn: Noom has collaborated with the renowned global fitness experts at FitOn to provide a range of workout videos designed to help GLP-1 users build and maintain lean muscle mass, which in turn supports a healthy metabolism and bone density. These videos will be curated by Noom's Chief of Medicine Dr. Linda Anegawa to be practiced by those being clinically treated for obesity

c. Comprehensive Changes to Noom's Well-Known Food Color System: For Noom members taking a GLP-1, Noom's "green-yellow-orange" food color system underwent the biggest change in its history with the addition of over 200,000 protein-rich foods now marked "green" for these members

d.   A Protein-Tracking Tool, helping members to hit their daily protein requirements, which also helps to prevent the loss of lean muscle

e.   Expert-Led Guidance and Content on Common Side Effects and Complications

f.   Customized, Interactive Mini-Courses focused on "Aha Moments" to drive long-term behavior change around nutrition, fitness, and goal-setting to support successful tapering and off-ramping from GLP-1s

g.   Muscle Defense is expected to be included within Noom GLP-1 Companion for Noom Weight members who indicate they are taking a weight-loss drug and for all members of Noom Med. Noom GLP-1 Companion with Muscle Defense will begin rolling out in the spring.

68.   [REDACTED]

69.   [REDACTED]

70.   [REDACTED]

**G.   Noom's Trademark Infringement**

71.   Without obé's authorization, and upon information and belief, beginning after obé acquired protectable exclusive rights in its MUSCLEGUARD Mark, Noom adopted and began using a mark identical to obé's MUSCLEGUARD Mark, *i.e.*, MuscleGuard and Muscle Defense (hereinafter, the "Infringing Mark") in U.S. commerce.

72.   Upon information and belief, Noom has been engaged in the provision, advertising, promotion, offering for sale, and sale of fitness programs using the Infringing Mark throughout the U.S.

73.   Upon information and belief, Noom's use of the Infringing Mark has bolstered its new Noom Med offering to current and future investors. The Infringing Mark has facilitated

commercial partnerships for Noom, which in turn have helped the company grow its business both inters of the revenue and subscribers.

74.     Below is a true and correct depiction of Noom's use of the Infringing Mark:



75.     Upon information and belief, Noom's fitness services under the Infringing Mark directly compete with obé's fitness services under the MUSCLEGUARD Mark.

76.     Similar to obé's fitness programs, Noom's infringing services are available online, and travel through the same channels as obé's services.

**H.     Noom's False Advertising**

77.     In its press release of January 19, 2024, Noom stated that "We designed Noom GLP-1 Companion with Muscle Defense to be the adjunct diet and exercise program that addresses key dangers associated with taking GLP-1s such as loss of muscle mass."

78.     This claim is false and misleading because [REDACTED]

79.     Noom's misrepresentation constitutes willful false advertising under the Lanham

Act.

**I.      Notice**

80.     [REDACTED]

81.     [REDACTED]

82.     [REDACTED]

83.     [REDACTED]

84.     [REDACTED]

**[REDACTED]**

85.     [REDACTED]

86.     [REDACTED]

87.     [REDACTED]

88.     [REDACTED]

89.     [REDACTED]

90.     [REDACTED]

91.     [REDACTED]

92.     [REDACTED]

**[REDACTED]**

93.     [REDACTED]

94.     [REDACTED]

95.     [REDACTED]

96.     [REDACTED]

97.     [REDACTED]

98.     [REDACTED]

99.     [REDACTED]

100.    [REDACTED]

101.    [REDACTED]

102.    [REDACTED]

103.    [REDACTED]

**CLAIM III – UNFAIR COMPETITION**
**(The Lanham Act)**

104.    obé realleges and incorporates by reference the allegations of the prior paragraphs of this Complaint as if fully set forth herein.

105.    Noom's unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Noom's fitness program, and is likely to cause consumers to believe, contrary to fact, that Noom's fitness program are sold, authorized, endorsed, or sponsored by obé, or that Noom is in some way affiliated with or sponsored by obé.

106.    Noom's unauthorized use in commerce of the Infringing Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

107.    Upon information and belief, Noom's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Noom with obé.

108.    Noom's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

109.    Noom's conduct as alleged herein is causing immediate and irreparable harm and injury to obé, and to its goodwill and reputation, and will continue to both damage obé and confuse the public unless enjoined by this court. obé has no adequate remedy at law.

110.    obé is entitled to, among other relief, injunctive relief and an award of actual damages, Noom's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### [REDACTED]

111.    [REDACTED]

112.    [REDACTED]

113.    [REDACTED]

114.    [REDACTED]

115.    [REDACTED]

116.    [REDACTED]

117.    [REDACTED]

118.    [REDACTED]

119.    [REDACTED]

120.    [REDACTED]

### CLAIM V – UNFAIR COMPETITION
### (New York Common Law)

121.    obé realleges and incorporates by reference the allegations of the prior paragraphs of this Complaint as if fully set forth herein.

122.    Noom has engaged in unfair methods of competition, as set forth above.

123.    [REDACTED]

124.     Noom was and is driven by unlawful predatory motives and malice, or acted in knowing or reckless disregard of the rights and interests possessed by obé in its attempt to obtain an unfair advantage over obé and to damage or injure obé in the industries within which obé has or will have competitors.

125.     As a direct and proximate result of Noom's conduct, obé has been damaged in that, by way of illustration and without limitation: (1) the name, reputation and goodwill of obé has or will be damaged; (2) obé has or will lose business, in an amount unable to be ascertained at this time; (3) loss of opportunity for other transactions, including sales or merger opportunity; and (4) the damages suffered by obé are expected to continue and multiply by reason of ongoing breaches by Noom.

126.     As a direct and proximate result of Noom's conduct, jointly and severally, obé has suffered and will continue to suffer extensive irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law.

127.     obé will suffer this harm unless and until Noom is restrained from his current and intended conduct.

128.     As a direct and proximate result of Noom's unlawful competition, obé has suffered and will continue to suffer damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation, and lost business in an amount to be proven at trial.

## CLAIM VI – FALSE ADVERTISING
### (The Lanham Act)

129.     obé realleges and incorporates by reference the allegations of the prior paragraphs of this Complaint as though fully set forth herein.

130.    In its press release of January 19, 2024, Noom stated that "We designed Noom GLP-1 Companion with Muscle Defense to be the adjunct diet and exercise program that addresses key dangers associated with taking GLP-1s such as loss of muscle mass."

131.    This claim is false and misleading, which constitutes false advertising under 15 U.S.C. § 1125.

132.    obé has been damaged by these misrepresentations in an amount to be determined at trial.

133.    Noom's misrepresentations were wholly intentional and willful.

134.    obé is entitled to disgorge Noom's profits from its willful false advertising.

135.    obé's remedy at law is not adequate to compensate for the injuries inflicted by Noom.

136.    Accordingly, obé is entitled to temporary, preliminary, and permanent injunctive relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, obé prays for relief as follows:

1.      For judgment in favor of obé and against Noom on all counts;

2.      Damages, including compensatory, exemplary and punitive, damages, in an amount to be determined at trial;

3.      Disgorgement of Noom's profits, trebled for willful misrepresentations;

4.      Preliminary and permanent injunctions enjoining Defendants' and their parents, subsidiaries, officers, directors, agents, employees, licensees, and any persons acting in concert with them, along with related individuals and entities, representatives, OEMs, dealers, distributors, and customers, from [REDACTED], and engaging in false advertising and unfair competition.

5.      An award to obé of its attorneys' fees incurred in prosecuting this action, as provided by [REDACTED], 17 U.S.C. § 1117(a) and/or 17 U.S.C. § 505, or as otherwise provided by law, whether by statute, common law or the Court's inherent power;

6.      Costs, expenses and attorney's fees;

7.      Pre-judgment interest at the legally allowable rate on all amounts owed; and

8.      All other and further relief deemed just and proper by the Court.

## DEMAND FOR JURY

obé demands trial by jury on all issues triable as a matter of right at law.

Dated: <u>January 29, 2024</u>

Respectfully Submitted,

Gary A. Abelev
Email: <u>garyabelev@HuntonAK.com</u>
Armin Ghiam
Email: <u>aghiam@HuntonAK.com</u>

HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 309-1000
Fax: (212) 309-1100

*Attorneys for Plaintiff*
*Our Body Electric, Inc.*